# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 5, 2013

Lyle W. Cayce
Clerk

No. 12-10903

LINDA BORDEN

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:11-CV-00200-A

Before SMITH, GARZA, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Linda Borden filed this action for medical malpractice against the Government pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1), 2674. Proceeding *pro se*, she appeals from the summary judgment granted to the Government, contending primarily that the district court erred in denying her motions to extend the deadline for designating an expert witness. She also asserts the district court erred in denying her motions for appointment

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10903

of counsel, denying her access to the courts, and not appointing an expert for her. AFFIRMED.

## FACTS AND PROCEDURAL HISTORY

"In reviewing a district court's grant of summary judgment, we are required to consider the evidence presented in the light most favorable to the party opposing the motion." *McPherson v. Rankin*, 736 F.2d 175, 177-78 (5th Cir. 1984). Mindful of this rule, we summarize the facts as alleged by Borden.

According to Borden, while in the custody of the Bureau of Prisons, she fell in May 2008 and injured her hand and foot. Prison medical staff initially refused to perform x-rays; when they were finally ordered four days after she was injured, the x-rays revealed broken bones in Borden's hand. She was scheduled to have the bones set and a cast placed on her hand a week later, but prison staff refused to take her to the appointment. Three weeks after the fall, she finally received treatment. By then it was too late for her bones to heal properly, and her affected hand is still severely disabled.

Meanwhile, Borden's foot injury steadily worsened. Prison medical staff gave her conflicting reports regarding the diagnosis, with some telling her x-rays had revealed broken bones and others telling her the foot was not broken. As her condition deteriorated, prison doctors and nurses ignored her foot until she was finally seen by an outside orthopedist one month after her fall. The orthopedist informed Borden that her foot was "shattered," and that she needed physical therapy for her hand. Prison staff allegedly again ignored the urgency of her medical situation. She did not receive necessary surgery on her foot until October 2008. The five-month delay in treatment caused her injuries to worsen such that her foot did not properly heal. She remains unable to use the foot.

Borden filed suit on March 28, 2011. On the same date, she filed a motion for appointment of counsel. The district court denied the motion for appointment of counsel on July 22 of that year. The court later denied two

No. 12-10903

motions to submit supplemental information supporting appointment of counsel, which the court construed as motions to reconsider its previous denial.

On October 14, 2011, the district court entered a pretrial scheduling order. It set a deadline of 120 days prior to the October 22, 2012 trial date for the parties to designate expert witnesses. On May 15, 2012, the Government moved for a 30-day extension of time to designate its expert witness, on the basis that it could not know exactly what sort of expert it would need, if any, until Borden had designated her expert. The court granted the Government's motion one week later.

On June 6, 2012, which was two and a half weeks before the deadline to designate her expert, Borden moved for a 120-day continuance on the trial date. She indicated that her incarceration without access to Internet resources or to medical experts would end on July 19, and she would be on home confinement in Florida until December 25. An extension of the trial date would have extended the expert-designation deadline, as expert designations were due 120 days prior to the trial. The court determined no special circumstances warranted moving the trial date, and denied the motion. It denied a subsequent motion to extend the expert-designation deadline, which Borden filed after the deadline had passed. On August 22, 2012, the district court granted the Government's motion for summary judgment and entered final judgment against Borden. Borden timely appealed.

## DISCUSSION

*1. Denial of motions for extension of time*

Summary judgment is reviewed *de novo*, and, as stated, we consider the evidence in the light most favorable to the nonmovant. *McPherson*, 736 F.2d at 177-78. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A district court's

3

enforcement of its scheduling order is reviewed for abuse of discretion. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). The trial court is entitled to "broad discretion to preserve the integrity and purpose of the pretrial order," and its decision to do so "must not be disturbed absent a clear abuse of discretion." *Id.* (internal quotation marks omitted).

In determining whether the district court abused its discretion in denying Borden's motions to amend the scheduling order, either by extending the expert-designation deadline or delaying the trial, we consider four factors: "(1) the explanation for the failure to [submit a complete report on time]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; (4) the availability of a continuance to cure such prejudice." *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (quoting *Geiserman*, 893 F.2d at 791) (alteration in original).

First, Borden's explanation for her failure to meet the designation deadline is that she was incarcerated for much of the period leading up to the deadline, and therefore lacked access to sufficient communication tools to seek out and hire an expert. Many plaintiffs in FTCA actions are not only incarcerated during part of discovery, as Borden was, but remain so through their trial dates and beyond. *E.g.*, *Hannah v. United States*, 523 F.3d 597 (5th Cir. 2008). No precedent indicates the fact of incarceration alone is a sufficient explanation to require the district court to modify a scheduling order.

Second, the expert testimony for which Borden sought an extension is vital to her cause. "State law controls liability for medical malpractice under the FTCA." *Id.* at 601. As a threshold issue, Texas law requires a plaintiff suing for medical malpractice to establish the standard of care. *Id.* If the standard of care is not "a matter of common knowledge or [] within the experience of the layman," plaintiff must provide expert testimony to meet her burden. *Id.* (internal quotation marks omitted). The proper mode of treatment for broken bones is

neither a matter of common knowledge nor in the average lay person's experience; therefore, without expert testimony, Borden has no claim. Indeed, Borden's inability to meet her threshold burden of proving the standard of care with expert testimony was the basis for the district court's summary judgment for the Government. This second factor weighs in Borden's favor.

The third factor does not strongly favor either party. The Government would likely not have faced significant prejudice had Borden's motion for an extension on the expert-designation deadline been granted, as very little discovery had been conducted and, as such, the Government would not have had to change a course charted by earlier discovery. On the other hand, Borden did not file the motion for an extension of the deadline (as opposed to her initial scheduling-order motion for a continuance) until well after the deadline had passed. If the district court had granted this late motion, the Government would have had a significantly reduced period of time in which to prepare for trial in light of Borden's expert's testimony.

Finally, the availability of a continuance favors Borden. The Government did not object to a continuance of the trial date when Borden initially requested it. In turn, this availability weakens the Government's position when it comes to the third factor; *i.e.*, had the district court granted Borden's unopposed motion for a continuance, then the Government would have had ample time to prepare for trial in light of Borden's expert designation.

Taken as a whole, the four factors may slightly favor granting Borden's requested extensions. Nonetheless, they do not tip the scales heavily enough in her favor to overcome the deferential standard of review. *See Geiserman*, 893 F.2d at 790. The trial court exercised its broad discretion to enforce its pretrial

order, and we cannot say it abused that discretion. Whether we would have reached the same conclusion is immaterial.[1]

This result is further supported by Borden's failure to request any extension until two weeks prior to the expert-designation deadline. She did not make a specific request for an extension of the expert-designation deadline until after the deadline had passed. Her ability to file several other motions in the preceding 15 months supports that she was able to file relevant motions, and could have moved more promptly to modify the scheduling order. Good cause to modify a scheduling order is said to exist only where the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." FED. R. CIV. P. 16(b) advisory committee's note (1983).

Despite the leniency traditionally afforded *pro se* litigants, Borden's late request to modify the scheduling order, despite filing numerous motions on other matters, vitiates any claim of diligence as to the expert.

Because the district court did not abuse its discretion in denying Borden's motions for extension of time, and because Borden failed to designate a medical expert to establish the threshold standard-of-care issue, the court properly granted summary judgment for the Government on her medical-malpractice claim. *Hannah*, 523 F.3d at 602.

*2. Borden's other claims*

Borden presents three additional arguments on appeal. First, she maintains the district court erred in denying her motion for appointment of counsel. "We will overturn a decision of the district court on the appointment of counsel only if a clear abuse of discretion is shown." *Cupit v. Jones*, 835 F.2d 82,

---

[1] It may have been preferable for the district court to apply the four *Reliance* factors in its own analysis. *See Anzures v. Prologis Texas I LLC*, 886 F. Supp. 2d 555, 561 (W.D. Tex. 2012) (applying four factors in ruling on motion to amend scheduling order). However, no authority requires the trial court to do so.

86 (5th Cir. 1987). As the district court stated, a civil litigant should receive appointed counsel only in exceptional circumstances. *E.g.*, *Williams v. Ballard*, 466 F.3d 330, 335 (5th Cir. 2006). The court examined Borden's medical records and determined she had not demonstrated the existence of such exceptional circumstances. Considering that Borden filed several motions in the district court and continues to represent herself on appeal, the district court did not abuse its discretion in concluding she was capable of litigating her claims without appointed counsel.

Next, Borden contends the district court's denial of her motions for appointment of counsel and extension of time to designate an expert constituted a denial of her access to the courts. This contention is conclusory and meritless. No authority need be cited for the notion that the right of access to courts does not require success on every motion.

Finally, Borden asserts the court should have appointed an expert witness for her, given her indigent and *pro se* statuses. No statute or court rule provides for the court to appoint an expert to assist in a litigant's case. Federal Rule of Evidence 706 allows the court to appoint an expert to assist in its own understanding of the issues, but not for the sole benefit of a party. Similarly, 28 U.S.C. § 1915, which governs proceedings involving indigent parties, "does not provide for the appointment of expert witnesses to aid an indigent litigant." *Hannah*, 523 F.3d at 601.

AFFIRMED.